[Civ. No. 35975. Second Dist., Div. Four. Nov. 25, 1970.]

MAURICE J. FRANK et al.,
Plaintiffs, Cross-defendants and Respondents, v.
WILLIAM KOZLOVSKY et al.,
Defendants, Cross-complainants and Appellants.

**COUNSEL**

Schlesinger & Tabor and Ernst Lipschutz for Defendants, Cross-complainants and Appellants.

Walleck, Shane & Baechtold and Henry L. Walleck for Plaintiffs, Cross-defendants and Respondents.

**OPINION**

**DUNN, J.**—This appeal is from a judgment awarding plaintiffs damages against defendants on the complaint, and against defendants on their cross-complaint. Plaintiffs Frank and Pensanti, doing business under the name of "Best-Bilt Construction Co.," had contracted with defendants to build a commercial building (nursery school) at 1311 North Harvard Street[1] in Los Angeles. Defendants' chief contention on this appeal is that plain-

---

[1]Although the final judgment gives the address as North "Harvest" Street, this apparently is a typographical error. The contract in evidence, the testimony and the court's findings all give "Harvard" Street as the address.

tiffs' proof failed under Business and Professions Code sections 7031 and 7029[2] in that plaintiffs lacked the capacity to sue.

Following nonjury trial, the court found the written contract between respondents and appellants was entered into June 16, 1966; the work under it was substantially completed in December 1966[3] and defendants went into possession.

On July 1, 1950, Best-Bilt Construction Co., a partnership composed of plaintiff Maurice J. Frank and one Michael Feldman, received general contractor's license No. B1-119873 from the State of California. Feldman left the state in 1950 or 1954 and the partnership terminated.

Plaintiff Frank continued doing contracting, alone, as "Best-Bilt Construction Co." until 1962 when plaintiff Hugo Pensanti became his partner. No application was made for a contractor's license for the partnership[4] until after the work for defendants was substantially finished. Plaintiffs, doing business as "Best-Bilt Construction Co.," operated under the original

---

[2]Business and Professions Code section 7031 reads: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract, except that such prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029."

Business and Professions Code section 7029 reads: "It is unlawful for any two or more licensees, each of whom has been issued a license to engage separately in the business or to act separately in the capacity of a contractor within this State, to jointly submit a bid or otherwise act in the capacity of a contractor within this State without first having secured an additional license for acting in the capacity of such a joint venture or combination in accordance with the provisions of this chapter as provided for an individual, copartnership or corporation."

[3]In one place the findings state the work was completed November 9, 1966 and in another December 1966. According to the evidence, the latter date is correct. The conflict is not pertinent to our determination.

Although each side argues the findings, we observe that neither side has furnished us with a record containing certified copies of them, an oversight of a type we cannot condone. With the parties' consent received during oral argument, we have sent for and reviewed the superior court file (rule 12(a), Cal. Rules of Court) containing the findings.

[4]Business and Professions Code section 7068.3, then in effect, read in part: "Dissolution of a partnership by the withdrawal of the qualifying partner or any other change in the personnel . . . shall terminate the license of such partnership as of the date of such dissolution. . . ."

This section was repealed by Statutes 1968, chapter 1003, section 1. Business and Professions Code section 7076 was enacted simultaneously, permitting continuation of certain business under the partnership license provided an application for such permission is filed within 30 days of the dissolution, and is approved.

license from 1962-1967.[5] Pensanti held an individual C-29 license (masonry contractor) beginning July 1, 1948. It became "inactive" (Bus. & Prof. Code, § 7076.5) on June 1, 1966. Frank held no license at all as an individual.

The court further found: that Frank and Pensanti "in good faith considered themselves entitled, under the name Best-Bilt Construction Co., to operate as contractors" under the contract with appellants; when a question arose regarding the license, they applied for a partnership license and one was issued as a routine matter on February 14, 1967 and they could have obtained it, if need be, before signing the contract of June 16, 1966; defendants suffered no harm from the lack of the license and "plaintiffs in good faith made substantial compliance with the licensing requirements of the State of California."

In the original partnership license, Frank was the "qualifying partner." (Bus. & Prof. Code, § 7068, subd. (b).) He testified he believed this made the Best-Bilt license valid, despite dissolution of his partnership with Feldman. "I always understood the fellow that took the examination and got the license was the license holder."

The question raised is whether the evidence supports the court's finding that there was "substantial compliance" with the licensing statutes.

*Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141 [308 P.2d 713] explains the reasoning behind a requirement for "strict" compliance. There plaintiffs, a partnership, had no partnership license at the time of entering into a contract with defendants. Lewis had an individual license but neither Queen nor the partnership was licensed. The court noted that Business and Professions Code section 7029 requires that a joint venture obtain such license, even though its members are individually licensed. The court agreed (p. 149), that: "Undoubtedly there are situations in which substantial compliance with the licensing requirements satisfies the policy of the statute"; but it goes on further to note (p. 150): "The statute makes it clear, furthermore, that if the contractor is a partnership, the experience, knowledge, and integrity of each partner is a vital consideration in determining whether to issue a license."

The plaintiffs there contended that "justice" required that defendants pay the plaintiffs. The court disagreed, stating (pp. 150-151): "One answer to this contention is that, even in the absence of a provision such as section

---

[5]The court found: ". . . according to the records of the appropriate department of the State of California said license was ostensibly in effect . . . until July 14, 1967. . . ." (The July date is in error and conflicts with other findings, as the court found and the evidence shows, a license was issued February 14, 1967, for the new partnership.)

7031, the courts generally will not enforce an illegal bargain or lend their assistance to a party who seeks compensation for an illegal act. The reason for this refusal is not that the courts are unaware of possible injustice between the parties, and that the defendant may be left in possession of some benefit he should in good conscience turn over to the plaintiff, but that this consideration is outweighed by the importance of deterring illegal conduct. Knowing that they will receive no help from the courts and must trust completely to each other's good faith, the parties are less likely to enter an illegal arrangement in the first place. . . . Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of the state."

*Loving & Evans* v. *Blick* (1949) 33 Cal.2d 603 [204 P.2d 23] was a similar case having similar outcome, neither the partnership nor one partner being licensed at the time of contracting with defendant, although the partner who negotiated with defendant had the license. Also see: *Kirman* v. *Borzage* (1944) 65 Cal.App.2d 156 [150 P.2d 3].

In *Latipac, Inc.* v. *Superior Court* (1966) 64 Cal.2d 278 [49 Cal.Rptr. 676, 411 P.2d 564], a 4-3 decision, the court found there was "substantial compliance," stating there are three elements that courts have considered in determining if the statute is satisfied. Thus, at pages 281-282, the opinion states these are: "(1) the fact that plaintiff held a valid license at the time of contracting, (2) that plaintiff readily secured a renewal of that license and (3) that the responsibility and competence of plaintiff's managing officer were officially confirmed throughout the period of performance of the contract." (Also see: *General Ins. Co. of America* v. *St. Paul Fire & Marine Ins. Co.* *(Cal.App.) 80 Cal.Rptr. 856.)

In our case, the first element is not satisfied. Thus, at the time of contracting, Best-Bilt did not hold a valid license. It is true that the old partnership of Frank and Feldman, doing business as Best-Bilt, had a license and the license was not cancelled by any official action. However, no official act was required, since dissolution of the partnership by a change in its personnel automatically terminated its license. Business and Professions Code section 7068.3 specified that "Dissolution of a partnership by . . . any . . . change in the personnel . . . shall terminate the license of such partnership as of the date of such dissolution." When Frank and Pensanti became partners in 1962 no license for the new partnership was

---

*A rehearing was granted on October 16, 1969. The final opinion was filed on December 18, 1969, and certified for nonpublication.

sought or obtained. As a result, this partnership was not licensed at the time it contracted with defendants.

The second element mentioned in *Latipac* likewise is not met for, although the partnership of Frank and Pensanti obtained a license in 1967, this was not a "renewal"; rather it was an entirely new license for a different partnership.

Only the third requirement of *Latipac* may be considered to have some support from evidence. Frank never held an individual license, but in 1950 he was the partner who qualified on behalf of Best-Bilt, a partnership then composed of Frank and Feldman. He believed that, as he was the qualifying partner, Best-Bilt continued to be licensed despite the departure of Feldman. When it was brought to Frank's attention that his assumption was not correct, a license for the partnership of Frank and Pensanti doing business as Best-Bilt was applied for and routinely issued in February 1967, with Frank as the qualifying partner.

In *Latipac* the court stated (p. 281) that the evidence in: ". . . the instant case presents each of the elements upon which the courts have in the past relied for the application of the doctrine of substantial compliance . . . [p. 282] . . . the courts have accorded great weight to the significant moment of the entrance of the parties into the relationship. The contractor who holds a valid license at the time of contracting executes a contract valid at its inception both as between the parties and as to third parties who might rely upon it. . . . [P. 283] As a corollary, the *absence* of a license at the time of contracting has figured prominently in decisions in which our courts have denied recovery for want of substantial compliance."

The requirements of *Latipac* are not satisfied in the present case. The partnership had no valid license when it contracted with defendants. The qualifying partner (Frank) held no individual license. Pensanti had an inactive license for masonry contracting, but not for general contracting. Best-Bilt held an invalid license for the partnership originally composing it, which partnership had long been dissolved; the new partnership doing business under the Best-Bilt name had never sought a license. For us to hold the statutes' requirements were satisfied would be to defeat the Legislature's expressed policy. Frank's belief that Best-Bilt was licensed amounts only to a claim that his ignorance of the law is excused by his good-faith belief that the law was otherwise.

The fact a license was issued routinely to the new Best-Bilt partnership, after the contract was entered into and performed, means little. Were this an excuse, no changed partnership need ever apply for a new license; such

would be sought only in the event a collection suit was indicated. The control which the Legislature prescribes over contractors would become a fiction, as the misdemeanor penalty authorized by Business and Professions Code section 7028 hardly would have sufficient deterrent effect to accomplish the legislative intent.

The court found defendants were not prejudiced by plaintiffs' lack of a license, but as stated by Justice Traynor in *Lewis & Queen,* "this consideration is outweighed by the importance of deterring illegal conduct."

Substantial compliance is not disclosed by the record.

Judgment for plaintiffs/cross-defendants is reversed, with instructions to dismiss the action and the cross-action.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied December 15, 1970.