[S.F. No. 24658. Mar. 11, 1985.]

KRIKOR ASDOURIAN, Plaintiff and Respondent, v.
IBRAHIM ARAJ et al., Defendants and Appellants.

**COUNSEL**

Charles O. Morgan, Jr., and G. Alfred Roensch for Defendants and Appellants.

Alan B. Axelrod and Axelrod & Blum for Plaintiff and Respondent.

**OPINION**

**BIRD, C. J.**—This case presents two issues. First, is a contractor barred from recovering compensation for work performed on remodeling contracts because he entered and performed the contracts in his own name rather than in the name of his licensed sole proprietorship? Second, is an oral home improvement contract for over $500 rendered void and unenforceable because it was not reduced to written form?

I.

Plaintiff, Krikor Asdourian, came to the United States in 1970. Prior to that time, he had worked as a contractor in Lebanon for 20 years. In 1970, he applied for a contractor's license with the Contractor's State License Board, as required by Business and Professions Code section 7028.[1] Plaintiff's credentials and qualifications were examined and approved by the board, and he passed the required examination. A license was issued to "Artko Remodeling and Construction" (Artko). Plaintiff's name and signature appear on the license as the "responsible managing party."

[1] All statutory references are to the Business and Professions Code unless otherwise noted.

At the time the license was issued to Artko, plaintiff had planned to incorporate under that name. However, his business remained a sole proprietorship, and he sometimes did work under his own name. He did not obtain a separate license in his name or have the existing license changed. Since he had taken the examination and received the license, he did not believe that was required.

Defendants are Ibrahim Araj and his wife Dalal Araj.[2] Mr. Araj is a grocer who buys and sells real property for investment purposes. He cannot read or write English. Asdourian and Araj were introduced by a mutual acquaintance in 1976 and became friends.

The dispute between the parties involves three contracts for remodeling properties owned by defendants in San Francisco.

*Lombard Street Garage*

In late September or early October of 1976,[3] the parties entered into a written agreement to convert a garage on Lombard Street into a restaurant. Plaintiff signed his own name to the agreement. The contract contained a description of the work to be done and established a total price of $21,500. Plaintiff drew up the preliminary plans for the garage conversion and submitted them to the Bureau of Building Inspection of the San Francisco Department of Public Works. The bureau did not approve the plans because they failed to comply with a new building code requirement that the entire building be made earthquakeproof, windproof, and fireproof if more than 30 percent of the building were remodeled.

With defendant's knowledge and approval, plaintiff hired an engineer to prepare plans which would comply with the building code. Plaintiff informed defendant that the new plans would require a drastic expansion in the scope of the project with a cost increase of $30,000 to $35,000. Defendant accepted the price increase and directed plaintiff to proceed.[4] A permit was finally obtained and work began. It was not until defendant refused to make any further payments that plaintiff stopped working. At this point, the job had been substantially completed.

*Lombard Street Flats*

In addition to the garage, the Lombard Street building contained four flats. Plaintiff remodeled two of the flats for defendant in 1976 for a price

---

[2] Subsequent references to "defendant" are intended to refer to Ibrahim Araj alone.

[3] The exact date of the agreement is unclear. Plaintiff apparently signed one copy of the contract on September 29th. The defendant signed another copy on October 4th.

[4] Plaintiff testified that defendant told him "I need the place, I am going to sell it . . . whatever extra expenses cost that [sic] is, I will give."

of $11,000. There was no dispute regarding that work, and plaintiff was paid in full. After work on the garage was begun, defendant asked plaintiff to remodel the remaining two flats. No price was discussed. The work was similar to, but more extensive than, the previous remodeling on the other flats. Plaintiff completed this work, but was not fully paid.

*San Fernando Way Property*

In May of 1977, while plaintiff was working on the Lombard Street property, defendant asked him to perform repairs on a single family residence on San Fernando Way.

After plaintiff began the repairs, defendant requested that the kitchen and the bathroom be remodeled. Plaintiff was told to use "the finest materials" because defendant was thinking of moving into the house himself. No written contract was executed. There was conflicting testimony as to whether the parties agreed orally on a price. Plaintiff completed the remodeling in July of 1977. Subsequently, the house was rented.

When defendant refused to pay for the work on the Lombard Street and San Fernando Way properties, plaintiff obtained a mechanic's lien on the Lombard Street property. An action to enforce that lien was filed, as well as a separate action for the balance due on the remodeling of the San Fernando Way residence. These actions were consolidated. Defendants answered, denied the allegations, and filed a cross-complaint which alleged that plaintiff had not completed the work and had been overpaid.

After a three-day trial, the trial court found that defendant had agreed to compensate plaintiff for the reasonable value of his work, including labor, materials, overhead and profit, on the Lombard Street garage conversion and the remodeling of the Lombard Street flats. The reasonable value of the work performed on the Lombard. Street property was found to be $83,812.45. Defendant was found to have paid $45,223.47 of that amount. The court also found that defendant had agreed to compensate plaintiff for the reasonable value of his work on the San Fernando Way residence, which was $19,278.15. Only $12,824.30 had been paid. Judgment was entered for plaintiff in the amount of $38,588.98 for the Lombard Street property, contingent on plaintiff's correction of certain "punch list" items[5] and a roof drainage problem. A separate judgment was entered in the amount of $6,453.85 on the San Fernando Way property.

---

[5]According to the record, the term "punch list" refers to a list, prepared at the end of a construction project, of tasks that must be completed or redone.

Defendants appeal both judgments. They contend that (1) plaintiff was not licensed as a contractor under section 7031 and so cannot recover compensation for his work; and (2) any agreements between the parties for work on the San Fernando Way residence and the Lombard Street flats were oral and, therefore, void because they violate section 7159, which requires that all home improvement contracts for over $500 be in writing.

## II.

■ Defendants claim that plaintiff is barred from collecting compensation by section 7031. That section provides: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract . . . ." Plaintiff used his own name in these transactions instead of the name which appeared on the license. Therefore, defendants assert, he was not "duly licensed" and cannot bring an action to recover on the contracts.

Section 7031 is a part of the Contractors License Law (§ 7000 et seq.). The Contractors License Law provides a comprehensive scheme which governs contractors doing business in California. ■ The general purpose of the law is " 'to guard the public against the consequences of incompetent workmanship, imposition and deception. In order to procure a license an applicant is required to make a showing of good character and of a degree of experience and general knowledge of the building, health, safety and lien laws of this state, and of the rudimentary administrative principles of the contracting business, as the board deems necessary for the safety and protection of the public.' " (*Conderback, Inc.* v. *Standard Oil Co.* (1966) 239 Cal.App.2d 664, 677 [48 Cal.Rptr. 901]; see also § 7068.)

Section 7031 has as its purpose the enforcement of the Contractors License Law. That purpose is accomplished by denying a contractor "access to the courts to recover for the fruits of his labor . . . when he violates the statute." (*Jackson* v. *Pancake* (1968) 266 Cal.App.2d 307, 309 [72 Cal.Rptr. 111].)

■ However, in exceptional circumstances the purposes of the Contractors License Law are not furthered by strict enforcement of section 7031. "In view of the severity of this sanction and of the forfeitures which it necessarily entails, our decisions record our reluctance to construe [section 7031] more broadly than requisite to the achievement of its manifest purpose. We have not insisted on literal compliance in the situation in which

the party seeking to escape his obligation has received the full protection which the statute contemplates." (*Latipac, Inc.* v. *Superior Court* (1966) 64 Cal.2d 278, 279-280 [49 Cal.Rptr. 676, 411 P.2d 564].) Instead, this court has employed the doctrine of "substantial compliance" to avoid the harsh consequences of strict application of section 7031.

The substantial compliance doctrine has been applied in several factual contexts. Most often, it has been applied when the contractor's license expired before completion of a project (*Latipac, supra,* 64 Cal.2d 278; *Airfloor Co. of California, Inc.* v. *Regents of University of California* (1978) 84 Cal.App.3d 1004 [149 Cal.Rptr. 130]; *Lewis* v. *Arboles Dev. Co.* (1970) 8 Cal.App.3d 812 [87 Cal.Rptr. 539]), or where the license was not obtained until after the contract was executed (*Gaines* v. *Eastern Pacific* (1982) 136 Cal.App.3d 679 [186 Cal.Rptr. 421]; *Vitek, Inc.* v. *Alvarado Ice Palace, Inc.* (1973) 34 Cal.App.3d 586 [110 Cal.Rptr. 86]).

The doctrine has also been applied where, following a change in the form of the contractor's business, the entity performing the contract was slightly different from the entity named on the contract. (*Weiman* v. *Superior Court* (1959) 51 Cal.2d 710 [336 P.2d 489]; *Gatti* v. *Highland Park Builders, Inc.* (1946) 27 Cal.2d 687 [166 P.2d 265]; *Citizens State Bank* v. *Gentry* (1937) 20 Cal.App.2d 415 [67 P.2d 364].)

*Gatti, supra,* 27 Cal.2d 687 was one of the earliest cases to employ the substantial compliance doctrine where the form of the contractor's business changed. In *Gatti,* plaintiffs (Gatti and Moore) were individually licensed as contractors. Gatti and defendant entered into a contract for some carpentry work. Moore was Gatti's construction foreman. Subsequently, Gatti and Moore decided to do the work as a partnership. The partnership did not obtain a separate license, although a license was later issued to Gatti, Moore, and a third person. This court found substantial compliance with the Contractors License Law and did not apply the strict prohibition of section 7031.

The *Gatti* court pointed out that formation of the partnership did not effect any change in the performance of the contract, since the same parties were performing and supervising the work. (*Gatti, supra,* 27 Cal.3d at p. 689.) Since a license was subsequently issued to Gatti, Moore, and a third person, "any matters which might form the basis of legitimate inquiry by the licensing board . . . were necessarily considered, and favorable action was taken thereon." (*Ibid.*)

The court refused to apply section 7031 literally. "If defendant is allowed to defeat plaintiffs' legitimate claim on this technical ground, resting on an

unnecessarily strict construction of the statutory provision . . . the legislative scheme in relation to the licensing of contractors . . . would become an unwarranted shield for the avoidance of a just obligation." (*Id.*, at p. 690.)[6] Although the policy considerations are similar, the present case is even stronger than *Gatti*. Here, the form of plaintiff's business did not change at all. It remained a sole proprietorship. Plaintiff simply used a different *name* for the business.

This court last applied the doctrine of substantial compliance in *Latipac, Inc.* v. *Superior Court, supra,* 64 Cal.2d 278. In *Latipac,* plaintiff possessed a valid contractor's license at the time the contract was executed, but continued to perform under the contract after the license expired. Defendant sought to avoid payment on the contract because of plaintiff's failure to comply strictly with section 7031. The court denied defendant's writ, noting that "[i]f the facts clearly indicate that the contractor has 'substantially' complied with the statute and that such compliance has afforded to the obligor the protection contemplated by the statute, we have rejected the obligor's attempt to escape liability." (*Latipac, supra,* 64 Cal.2d at p. 281.)

*Latipac* set out the considerations which might warrant application of the doctrine of substantial compliance: "(1) the fact that plaintiff held a valid license at the time of contracting, (2) that plaintiff readily secured a renewal of that license and (3) that the responsibility and competence of plaintiff's managing officer were officially confirmed throughout the period of performance of the contract." (*Latipac, supra,* 64 Cal.2d at pp. 281-282.)

Since each of the factors was present in *Latipac,* the court declined to decide "whether any of them, singly or in more limited combination, would constitute 'substantial compliance.'" (*Latipac, supra,* 64 Cal.2d at p. 281.) However, the court emphasized that "the test must be *whether the contractor's 'substantial compliance with the licensing requirements satisfies the policy of the statute.'*" (*Ibid.,* italics added.) If the facts clearly indicate substantial compliance which satisfies the policy of the Contractors License Law, the failure to establish all of the *Latipac* factors should not defeat plaintiff's claim.

██ In this case, plaintiff obtained a license for his sole proprietorship under the name Artko. Plaintiff's name was on the license as the responsible managing party. At the time the license was issued, he intended to incorporate Artko. Had he done so, Artko would have become an entity separate from plaintiff. However, the incorporation never took place, and the busi-

---

[6] In 1961, the Legislature amended section 7031 to make the exception created in *Gatti* explicit in the statute. (Stats. 1961, ch. 1325, § 1, p. 3105.)

ness remained a sole proprietorship. Plaintiff was personally responsible for all debts and responsibilities incurred by the business, and the assets of the business were plaintiff's assets. In essence, plaintiff *was* Artko.

Plaintiff should have obtained a license in his own name in order to do business under that name. As previously noted, section 7031 requires that a contractor prove that he was "duly licensed" in order to collect compensation. "It is unlawful for any person who is or has been a . . . responsible managing officer of a licensed . . . firm . . . to individually engage in the business or individually act in the capacity of a contractor . . . without having a license in good standing to so engage or act." (§ 7028.5.) Further, section 7117 makes "[a]cting in the capacity of a contractor under any license issued hereunder except: (a) in the name of the licensee as set forth upon the license . . . a cause for disciplinary action."

Since plaintiff did not have a license in his own name, he performed these contracts in violation of sections 7028.5 and 7117. Hence, he was not duly licensed. If literal compliance with section 7031 is required, he cannot legally maintain these actions. However, under the circumstances of this case, the policy of the Contractors License Law has been satisfied. Defendant should not be able to avoid his obligation to compensate plaintiff for the work he performed.

The first factor considered by the *Latipac* court was whether the plaintiff held a valid license at the time the contract was executed. Here, plaintiff's firm held a valid license at the time of the contracts. The license had been issued to Artko, but bore plaintiff's name as the responsible managing party. That license provided sufficient evidence of plaintiff's qualifications. The fact that plaintiff used his own name when he entered into the contracts is technically a violation of section 7028.5. However, it did not prevent defendant from receiving the full and effective protection of the statute.[7]

The second factor mentioned in *Latipac,* license renewal, is not relevant here. There was no period during which plaintiff's business was not licensed, nor was there any change in the form of the business from the time the license was issued. Plaintiff simply used his own name in these transactions. The license, which officially attested to plaintiff's experience and qualifications, was effective throughout performance. There was no need to

---

[7]At least two courts since *Latipac* have held that section 7031 does not require a license at the time of execution of a contract. (*Gaines, supra,* 136 Cal.App.3d 679; *Vitek, supra,* 34 Cal.App.3d 586; see also, *General Ins. Co.* v. *Superior Court* (1972) 26 Cal.App.3d 176 [102 Cal.Rptr. 541].) These courts have noted the statute requires the contractor to prove only that he was duly licensed at all times "*during the performance of* [*the*] *act or contract.*" (*Vitek, supra,* 34 Cal.App.3d at p. 590, italics in original.)

renew it for it did not expire. The purpose served by this factor, "confirmation [of] plaintiff's continuing competence and responsibility during the period of performance" (*Latipac, supra,* 64 Cal.2d at p. 283), was met by the existence of the valid license issued to Artko.

Plaintiff clearly meets the third *Latipac* factor, which requires official confirmation of "the responsibility and competence of plaintiff's managing officer . . . throughout the period of performance of the contract." (*Latipac, supra,* 64 Cal.2d at p. 282.) In *Latipac,* the license of the contracting corporation expired, but its " 'responsible managing officer,' " Mr. Lee, was at all times the responsible managing officer of other corporations which held valid contractor's licenses. "[T]he fitness of a corporation to enjoy a contractor's license lies in the competence and experience of the individual who qualifies on its behalf. . . . [¶] . . . The qualifications of Mr. Lee form the basis for the licenses of a number of these [other] corporations." (*Id.,* at p. 285.)

One of the corporations held a license throughout the period of performance. "The existence of this license necessarily evidences an official determination of the experience and competence of Mr. Lee, *the same experience and competence which would have been in issue in a consideration of plaintiff's application for renewal of its license.* This official confirmation of Mr. Lee's qualifications throughout the period of performance should exorcise any remaining doubt that the policy of the statute has been satisfied . . . ." (*Id.,* at pp. 285-286, italics added and omitted.)

Here, the competence and experience of plaintiff Asdourian formed the basis of the license issued to Artko. " '[A]ny matters which might form the basis of legitimate inquiry by the licensing board' in determining the fitness of [Asdourian] to enjoy a license were 'necessarily considered' and resolved in connection with the issuance of the license to [Artko]." (*Latipac, supra,* 64 Cal.2d at p. 286; accord *Gatti, supra,* 27 Cal.2d at p. 689.)

Issuance of a license to Asdourian in his own name would not have provided defendant with any greater assurances that he was dealing with an experienced and competent contractor. Nor would it have provided any different information concerning the status or solvency of plaintiff's business. The business entity was precisely the same as that to which the license had been issued. The work would have been performed by the same employees, and supervised by the same person. Defendant would have obtained no better protection, and no different performance, had he contracted with Artko.

Despite the substantial compliance doctrine, some courts have continued to insist on strict compliance with section 7031. (See *Roy Brothers Drilling*

*Co.* v. *Jones* (1981) 123 Cal.App.3d 175 [176 Cal.Rptr. 449]; *Brown* v. *Solano County Business Development, Inc.* (1979) 92 Cal.App.3d 192 [154 Cal.Rptr. 700]; *Weeks* v. *Merritt Bldg. & Constr. Co.* (1974) 39 Cal.App.3d 520 [114 Cal.Rptr. 209]; *General Ins. Co.* v. *Superior Court, supra,* 26 Cal.App.3d 176 [hereafter *General Insurance*]; *Frank* v. *Kozlovsky* (1970) 13 Cal.App.3d 120 [91 Cal.Rptr. 297]; *Steinwinter* v. *Maxwell* (1960) 183 Cal.App.2d 34 [6 Cal.Rptr. 496].)

Defendants rely primarily on the case of *General Insurance, supra,* 26 Cal.App.3d 176. In that case, the individual performing the work was duly licensed. However, he formed a corporation of which he was the sole owner, president, chairman of the board and responsible managing officer. The corporation did not obtain a license because of the mistaken belief that the personal license was sufficient. The corporation entered into a contract with defendant and completed performance. After defendant refused to render payment, the corporation brought an action to recover on the contract. The Court of Appeal issued a writ of mandate compelling summary judgment for the defendant because of plaintiff's failure to comply with section 7031. (*General Insurance, supra,* 26 Cal.App.3d at p. 185.)

Although the court in *General Insurance* admitted that "the ultimate statutory purpose is as well satisfied in the case at bench as it was in *Latipac*" (*General Insurance, supra,* 26 Cal.App.3d at p. 183), it nevertheless refused to apply the doctrine of substantial compliance. Relying on *Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141 [308 P.2d 713], *Frank, supra,* 13 Cal.App.3d 120, and the dissent in *Latipac,* the court held that it was " 'not free to weigh . . . [equitable] considerations . . . .' " (*General Insurance, supra,* 26 Cal.App.3d at p. 184, original brackets.)

Notwithstanding the Court of Appeal's apparent agreement with the *dissent* in *Latipac,* it was not free to disregard the clear rule announced by the *majority.* The doctrine of substantial compliance is well-established in decisional law of this state. (*Roy Brothers Drilling Co., supra,* 123 Cal.App.3d at p. 186.) As the court noted in *Latipac,* "[f]or nearly three decades we have developed and applied to cases arising under section 7031 the doctrine of 'substantial compliance'; during that entire period the Legislature has indicated no hint of disapproval of this construction." (*Latipac, supra,* 64 Cal.2d at p. 281; see also Comment, *New Interpretations of California's Contractors' License Law* (1967) 1 U.S.F. L.Rev. 298, 301.)

It has now been almost *five* decades since the doctrine was first applied. The Legislature has manifested no disapproval. In the limited and extraordinary circumstances in which it is applied, the policies underlying the doc-

trine remain compelling. *Gatti, Latipac,* and the cases that have followed them continue to provide the framework for determining whether a contractor has substantially complied with section 7031. To the extent that *General Insurance, supra,* 26 Cal.App.3d 176 rests on the logic of the *Latipac* dissent, it is disapproved.

This case is more similar to *Schantz* v. *Ellsworth* (1971) 19 Cal.App.3d 289 [96 Cal.Rptr. 783]. In *Schantz,* the plaintiff was personally licensed as a real estate broker. He also did business under the fictitious name "Investment Trends." The plaintiff had not complied with section 2731 of the California Administrative Code, which requires a real estate broker using a fictitious name to obtain a license under the fictitious name. Section 10136, a parallel provision to section 7031, provides that no real estate broker or real estate salesman "shall maintain any action . . . for the collection of compensation . . . without alleging and proving that he was duly licensed . . . at the time the cause of action arose."

The plaintiff in *Schantz* was allowed to bring an action under a contract made and performed while using the fictitious name. The Court of Appeal held that all section 10136 "literally" requires is proof that the plaintiff was a "duly licensed" real estate broker. Therefore, it "does not preclude maintenance of [an] action by one who holds a valid real estate broker's license but who has failed to obtain . . . a license for the use of a fictitious name." (*Schantz, supra,* 19 Cal.App.3d at p. 293.)

The court acknowledged that failure to obtain a license for the fictitious name may be grounds for disciplinary action by the Real Estate Commissioner. (§ 10177, subd. (d).) However, it reasoned that "[t]he purpose of the licensing requirement is to protect the public from the perils incident to dealing with incompetent or untrustworthy real estate practitioners. [Citations.] The statutory purpose, insuring the competency and trustworthiness of real estate practitioners, is satisfied by proof of plaintiff's valid real estate broker's license. It was in connection with the application for and issuance of that license that his competency and trustworthiness were examined." (*Schantz, supra,* 19 Cal.App.3d at pp. 292-293.)

The policy considerations here are indistinguishable from those in *Schantz.* Plaintiff obtained a license under the name "Artko." In connection with the issuance of that license, his qualifications were examined and approved. Although he used a different name and should have obtained a separate license to comply with section 7028.5, his qualifications did not change, nor did the status or form of his business. He was simply using a different name for the same sole proprietorship. Unlike the plaintiff in *Schantz,* he was using his *own* name so there was no need to file a fictitious

business name statement. (See § 17900.)[8] As in *Schantz,* the plaintiff here has substantially complied with the licensing statute.

Defendant attempts to rely on a technicality to defeat plaintiff's claims. This technicality is unrelated to defendant's real dispute with plaintiff—the *terms* of the remodeling agreements. That dispute was resolved by the trial court in plaintiff's favor. To allow defendant to prevail on a technicality would be to allow section 7031 to be used as a " 'shield for the avoidance of a just obligation.' " (*Latipac, supra,* 64 Cal.2d at p. 281; *Gatti, supra,* 27 Cal.2d at p. 690.)

"The purpose of the licensing requirement is to protect the public from the perils incident to contracting with incompetent or untrustworthy contractors." (*Davis Co.* v. *Superior Court* (1969) 1 Cal.App.3d 156, 158 [81 Cal.Rptr. 453]; see also *Rushing* v. *Powell* (1976) 61 Cal.App.3d 597, 604 [130 Cal.Rptr. 110]; *Weeks, supra,* 39 Cal.App.3d at p. 525.) In this case, "the policy of the licensing statute has been effectively realized, and . . . defendant has received in full measure the protection intended by the Legislature." (*Latipac, supra,* 64 Cal.2d at p. 287.) As in *Latipac,* "[f]idelity to precedent and considerations of equity each preclude us from requiring the wholly gratuitous enrichment of defendant at the expense of plaintiff . . . ." (*Ibid.*) Plaintiff substantially complied with the Contractors License Law and should not be denied relief.

### III.

■ Defendants also assert that plaintiff is barred under section 7159 from recovering for work completed on the San Fernando Way residence and the Lombard Street flats because there were no written contracts for those jobs. That section applies to "home improvement contracts" between a contractor and an "owner or tenant" for "work upon a building or structure for proposed repairing [or] remodeling" where the aggregate contract price exceeds $500.

---

[8]The pertinent part of section 17900 provides: "(a) As used in this chapter, 'fictitious business name' means: [¶] (1) *In the case of an individual, a name that does not include the surname of the individual* or a name that suggests the existence of additional owners.

" . . . . . . . . . . . . . . . . . . . . . . . .

"(b) A name that suggests the existence of additional owners within the meaning of subdivision (a) is one which includes such words as 'Company,' '& Company,' '& Son,' '& Sons,' '& Associates,' 'Brothers,' and the like, but not words that merely describe the business being conducted." (Italics added.)

The purpose of the fictitious name statute is to make a public record of persons doing business under a fictitious name, so that "those dealing with them may at all times know who are the individuals with whom they are dealing or to whom they are giving credit or becoming bound." (*Levelon Builders, Inc.* v. *Lynn* (1961) 194 Cal.App.2d 657, 662-663 [15 Cal.Rptr. 582].) Since plaintiff used his own name, defendant was fully aware at all times "with whom he was dealing" and "to whom he was becoming bound."

Section 7159 provides that every such contract and any changes in the contract "shall be evidenced by a writing and shall be signed by all the parties to the contract . . . ."[9] A "home improvement contract" is defined as an agreement between a contractor and an owner "for the performance of a home improvement . . . ." (§ 7151.2.) A "home improvement" is defined as "the repairing, remodeling, altering, converting, or modernizing of, or adding to, residential property . . . ." (§ 7151.)

A violation of section 7159 is punishable as a misdemeanor. Defendants contend that since the agreements between plaintiff and defendant did not conform to the requirements of section 7159, they are illegal and unenforceable as violative of public policy.

Plaintiff responds that section 7159 was intended to protect unsophisticated home owners and tenants from overreaching by unscrupulous contractors, not to protect persons such as defendants, who own several properties for investment purposes. If section 7159 does apply, plaintiff contends that a contract entered into in violation of the statute is not void because the exclusive remedies for noncompliance are those provided in the statute.

At least one court has agreed with plaintiff regarding the primary purpose of section 7159, concluding that the statute is "intended as a protection for *consumers* in an economic area which otherwise might well provide opportunity for abuse by contractors." (*Calwood Structures, Inc.* v. *Herskovic* (1980) 105 Cal.App.3d 519, 522 [164 Cal.Rptr. 463], italics added.)

An inexperienced tenant or homeowner, contracting for repairs or remodeling of his own home, might be much more vulnerable to a dishonest contractor than is an investor who derives income from improving and either *selling or renting multiple properties.* ■ Defendants, as real estate investors, do not fall squarely into the class which section 7159 was most clearly enacted to protect.

However, even experienced real estate investors will benefit from the protection offered by section 7159. Contractors should be encouraged to

---

[9]The pertinent part of section 7159 provides: "This section shall apply only to home improvement contracts, as defined in Section 7151.2, between a contractor, whether a general contractor or a specialty contractor, who is licensed or subject to be licensed pursuant to this chapter with regard to such transaction and who contracts with an owner or tenant for work upon a building or structure for proposed repairing, remodeling, altering, converting, or modernizing such building or structure and where the aggregate contract price specified in one or more improvement contracts, including all labor, services, and materials to be furnished by the contractor, exceeds five hundred dollars ($500). [¶] Every home improvement contract and any changes in the contract subject to the provisions of this section shall be evidenced by a writing and shall be signed by all the parties to the contract thereto. . . ."

utilize written contracts for *all* home improvement jobs, precisely to avoid the kind of dispute which arose here.

The agreements here do fall squarely within the statutory definitions. Plaintiff, a contractor, and defendant, an owner, contracted to repair and remodel residential property for a price which exceeded $500.[10] Given the clear statutory language and the important public policy which supports it, the statute, with its misdemeanor sanction, unquestionably *applies* in this situation. The question is whether noncompliance with section 7159 renders the contracts *void*.

■ Generally a contract made in violation of a regulatory statute is void. (*Vitek, supra,* 34 Cal.App.3d at p. 591.) Normally, courts will not " 'lend their aid to the enforcement of an illegal agreement or one against public policy . . . .' " (*Felix* v. *Zlotoff* (1979) 90 Cal.App.3d 155, 162 [153 Cal.Rptr. 301]; *Norwood* v. *Judd* (1949) 93 Cal.App.2d 276, 288-289 [209 P.2d 24].) This rule is based on the rationale that "the public importance of discouraging such prohibited transactions outweighs equitable considerations of possible injustice between the parties." (*Southfield* v. *Barrett* (1970) 13 Cal.App.3d 290, 294 [91 Cal.Rptr. 514].)

■ However, "the rule is not an inflexible one to be applied in its fullest rigor under any and all circumstances. A wide range of exceptions has been recognized." (*Southfield* v. *Barrett, supra,* 13 Cal.App.3d at p. 294.) For example, the rule will not be applied where the penalties imposed by the Legislature exclude by implication the additional penalty of holding the contract void. (*Vitek, supra,* 34 Cal.App.3d at pp. 591-592; *Calwood Structures, supra,* 105 Cal.App.3d at p. 522.) Further, illegal contracts will be enforced to avoid unjust enrichment to the defendant at the expense of the plaintiff. (*Southfield* v. *Barrett, supra,* 13 Cal.App.3d at p. 294.)

Plaintiff asserts that a contract entered into in violation of section 7159 is not for that reason void because the exclusive penalties for noncompliance are those provided in the statute.

Violation of section 7159 is a misdemeanor punishable by fine and/or imprisonment. Nothing in the statute declares that an oral contract entered into in contravention of section 7159 shall be void. ■ Whether the statute is to be interpreted as providing exclusive penalties depends upon the

---

[10]Defendants do not argue that the contract for the conversion of the garage on Lombard Street into commercial space is subject to the requirements of section 7159. The conversion of a garage into a restaurant does not qualify as a "home improvement" under either the plain meaning of the statutory language or the apparent purpose of the legislation.

intent of the Legislature. (*Calwood Structures, supra,* 105 Cal.App.3d at p. 522.)

The original version of section 7159, enacted in 1969 (Stats. 1969, ch. 1583, § 15, pp. 3220-3221) was effective from 1970 through 1975. It provided explicitly that "[c]ontracts which fail to comply with the provisions of this section shall not be deemed to be invalid solely because of noncompliance." (*Id.,* at p. 3221.) However, the statute was substantially amended in 1975, and this language was deleted. (Stats. 1975, ch. 511, § 1, pp. 1041-1042.)

"Where the Legislature undertakes to amend existing law by deleting an express provision of the previous statute, it is presumed the Legislature intended to change the law." (*People* v. *Schmel* (1975) 54 Cal.App.3d 46, 51 [126 Cal.Rptr. 317]; accord *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131, 143 [197 Cal.Rptr. 79, 672 P.2d 862]; *In re Marriage of Banks* (1974) 42 Cal.App.3d 631, 636 [117 Cal.Rptr. 37].) Accordingly, this court must presume that the Legislature did not intend the express penalty provisions of section 7159 to be exclusive.

Although the penalties provided by section 7159 are no longer exclusive, there is no indication that the Legislature intended that *all* contracts made in violation of section 7159 are void. Absent an express statutory *prohibition,* other exceptions to the general rule that illegal contracts are unenforceable may be applied.

In compelling cases, illegal contracts will be enforced in order to "avoid unjust enrichment to a defendant and a disproportionately harsh penalty upon the plaintiff." (*Southfield* v. *Barrett, supra,* 13 Cal.App.3d at p. 294.) " 'In each case, the extent of enforceability and the kind of remedy granted depend upon a variety of factors, including the policy of the transgressed law, the kind of illegality and the particular facts.' " (*South Tahoe Gas Co.* v. *Hofmann Land Improvement Co.* (1972) 25 Cal.App.3d 750, 759 [102 Cal.Rptr. 286].)

Application of these factors to the contracts at issue here supports the conclusion that they should be enforceable. First, the policy of section 7159 is to encourage written contracts for home improvements in order to protect unsophisticated consumers. (See *Calwood Structures, supra,* 105 Cal.App.3d at p. 522.) However, defendants are not members of the group primarily in need of the statute's protection. In this context, the misdemeanor penalties provided in the statute should be sufficient. It will not defeat the statutory policy to allow plaintiff to recover for the reasonable value of the work performed.

Second, a contract made in violation of section 7159 does not involve the kind of illegality which automatically renders an agreement void. The contracts at issue here were not *malum in se.* They were not immoral in character, inherently inequitable or designed to further a crime or obstruct justice. (See *Vitek, supra,* 34 Cal.App.3d at p. 593.) There was nothing "intrinsically illegal" about the agreements between plaintiff and defendant to repair and remodel the residential property. Rather, the contracts were *malum prohibitum,* and hence only *voidable* depending on the factual context and the public policies involved. (*Ibid.*)

Finally, the facts of this case support the conclusion that the contracts between plaintiff and defendant, while they violated section 7159, should nevertheless be enforced. Defendant is a real estate investor, not an unsophisticated homeowner or tenant. Further, because plaintiff and defendants were friends, who had had business dealings in the past, the failure to comply with the strict statutory formalities is, perhaps, understandable. (See *Calwood Structures, supra,* 105 Cal.App.3d at p. 522.) Plaintiff fully performed according to the oral agreements. Defendants accepted the benefits of the oral agreements. If defendants are allowed to retain the value of the benefits bestowed by plaintiff without compensating him, they will be unjustly enriched.

This case is similar to *Calwood Structures, supra,* 105 Cal.App.3d 519. In that case, the contractor entered into an oral agreement with the defendants for certain home improvements. When the work was completed, defendants refused to pay. An action to recover the balance was initiated, and the defendants demurred on the basis that the agreement had not been in writing as required by section 7159. The trial court sustained the demurrer.

The Court of Appeal reversed, relying in part on the exception to the general rule which permits enforcement of an illegal contract to prevent unjust enrichment.[11] The court concluded, "appellant undertook to provide certain home improvements at the instance and request of respondents and, so far as the complaint discloses, completed them. The parties, it is alleged, were social acquaintances and the liabilities incurred by appellant in carrying out the project arose only from the exercise of authority granted him

[11]The court in *Calwood Structures* also based its holding in part upon a finding that the statute "'exclude[s] by implication the additional penalty involved in holding the illegal contract unenforceable.'" (*Calwood Structures, supra,* 105 Cal.App.3d at p. 522.) The court was evidently unaware of the legislative history of section 7159, including the deletion of the provision which declared that contracts made in violation of the statute were not to be deemed invalid solely on that basis. To the extent that the decision in *Calwood Structures* is dependent upon this oversight, it is disapproved. However, the court also recognized that the contract was enforceable for the same reasons the contracts in the instant case should be enforced.

seriatim by respondents . . . . Accordingly, 'the present case is one in which plaintiff [might] be entitled to some relief. The violation of law was one which did not involve serious moral turpitude; the policy of protecting the public from the future consequences of the contract will not be furthered [by denying relief] because the transaction has been completed; . . . defendant [could] be unjustly enriched at the expense of plaintiff . . .; and the penalty resulting from denial of relief [could] be disproportionately harsh in relation to the violation involved.'" (*Calwood Structures, supra,* 105 Cal.App.3d at p. 522, brackets and second and third ellipses in original.)

As a contractor, plaintiff should have been aware that the contracts were required to be in writing.[12] Indeed, a written contract and written modifications explicitly delineating the price for the work involved here would have avoided this litigation. Plaintiff's violation of the statute is a misdemeanor, punishable by fine or imprisonment. (§ 7159.) However, in this factual context, enforcing the oral agreements does not defeat the policy of the statute. The penalty which would result from the denial of relief would be disproportionately harsh in relation to the gravity of the violations.

IV.

 Plaintiff qualified for a contractor's license on behalf of his sole proprietorship. The fact that the license was not issued in his name did not deprive defendants of the full protection contemplated by the license requirement of the Contractors License Law. Plaintiff substantially complied with section 7031. He should not be denied compensation for his work.

 The oral contracts for the remodeling work on defendants' residential property are enforceable, notwithstanding section 7159. To deny relief would be to impose an unduly harsh penalty on plaintiff and to leave defendants unjustly enriched. Public policy would not be effectively served by allowing such an inequity.

The judgments in favor of plaintiff are affirmed.

---

[12]Lack of knowledge among contractors of regulations governing home improvement contracts is evidently a growing problem. At a public hearing of the Assembly Committee on Business and Professions in August of 1981, Armand Fontaine, executive vice president of the American Building Contractors Association, testified that a specialized board is needed to regulate contractors doing home improvements. According to Mr. Fontaine, "this is a very big problem with us. [You may have] the greatest builder in the world, but when he enters the home improvement area, he doesn't know that he's got some 50 or 60 different regulations he's got to abide by in the contract form . . . ." (Assem. Com. on Bus. & Prof. Contractors' State License Board: Needed Improvements in Administration, Structure and Law Enforcement (1981) p. 23.)

Broussard, J., Reynoso, J., Lucas, J., and Stephens, J.,* concurred.

**KAUS, J.**—I agree wholeheartedly. I write separately only to express my doubt that plaintiff is guilty of even a technical violation of section 7028.5 of the Business and Professions Code.

Section 7028.5 prohibits the responsible managing officer of a licensed "copartnership, corporation, firm, association *or other organization*"—my emphasis—to engage in business as an individual. Plaintiff was never an organization. He was always an individual, albeit one who called himself Artko from time to time. Therefore he could not possibly violate section 7028.5. There may have been a cosmetic defect in the way he procured his license, but even that was minimal since section 7068, subdivision (a) permits the issuance of a license to an individual who "shall qualify by personal appearance or by the appearance of his responsible managing employee."

**MOSK, J.**—I dissent.

To achieve what they perceive as a desirable result, the majority employ equity in a simple contract action and in doing so they emasculate a legislative enactment that is clear and unambiguous.

Indeed, the majority concede, as they must, that "Since plaintiff did not have a license in his own name, he performed these contracts in violation of sections 7028.5 and 7117. Hence, he was not duly licensed. If literal compliance with section 7031 is required, he cannot legally maintain these actions." (*Ante,* p. 285.) Nevertheless the majority proceed by deft legerdemain to find that "the policy," if not the text, of the law has been satisfied. (*Ibid.*) This result, obtained by categorizing required compliance with the statute as "a technicality" (*ante,* p. 289), is untenable in an action at law.

To complete their total disregard of governing statutes, the majority even permit enforcement of an alleged oral contract for home improvements, despite section 7159 which makes it a crime to enter into such an agreement. It is inconceivable to me that a contract, specifically made illegal by the Legislature, can be enforced civilly on a theory that a civil judgment "does not defeat the policy of the statute." (*Ante,* p. 294.) The result may be that the plaintiff will enjoy the fruits of his money judgment in a jail cell.

The Court of Appeal reached the proper result in this case. Therefore I adopt as my own the relevant parts of the opinion of Justice Rouse, concurred in by Presiding Justice Kline and Justice Miller:

---

*Assigned by the Chairperson of the Judicial Council.

Defendants first contend that plaintiff was required to allege and prove that he possessed a valid contractor's license in his name in order to recover damages in this action.

Section 7031 of the Business and Professions Code[1] provides that "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract, except that such prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029."

In this case, no evidence was introduced of a contractor's license in the name of "Krikor Asdourian." Instead, the evidence established that the license was issued to "Artko Remodeling and Construction" (Artko). Plaintiff was the sole owner and operator of Artko and his name appears as the responsible managing party on the license.

Plaintiff argues that there is no legally significant distinction between "Krikor Asdourian" and "Artko," because Artko is merely another name under which he was doing business. In this instance, however, there is no evidence that plaintiff dealt with defendants in the capacity of Krikor Asdourian doing business as Artko. Artko's name does not appear on the contract for the construction work. Moreover, plaintiff testified that he never filed a fictitious name statement, because he was using the name Krikor Asdourian for his business.

Even assuming that Krikor Asdourian was doing business as Artko, plaintiff's argument is without merit. In *Rothwell* v. *Vaughn* (1920) 49 Cal.App. 429 [123 P. 611], the court acknowledged that there is a legally significant distinction between an individual and a fictitious business name. The issue there was whether an action could be maintained despite the fact that the plaintiff had not complied with the fictitious name statute. The court concluded that "As this contract was not made in the fictitious or partnership name, but was made in the individual names of the parties, it is clear that the section [former Civ. Code, § 2468] does not prohibit the parties maintaining an action of this nature." (P. 435.)

Plaintiff next relies on section 7025, which defines "person," as used in the chapter requiring the contractor's license, as "an individual, a firm,

---

[1]Unless otherwise indicated, all statutory references are to the Business and Professions Code.

copartnership, corporation, association or other organization . . . ." Plaintiff then asserts that a fictitious business name does not fall within the language of this statute. Thus, he contends that there is only one "person" to be licensed pursuant to section 7031.

However, a "firm" is defined, among other things, as "the name, title, or style under which a company transacts business: the firm name . . . ." (Webster's Third New Internat. Dict. (3d ed. 1961) p. 856; "Business entity or enterprise. Unincorporated business . . . ." Black's Law Dict. (5th ed. 1979) p. 571, col. 1.) Under either of these definitions, Artko is a firm.[2] Thus, both Artko and Krikor Asdourian are "person[s]" within the meaning of section 7025 and each must comply with the licensing requirement of section 7031.

Therefore, in a literal application of section 7031, the license issued to Artko can be of no use to plaintiff as a means of satisfying the licensing requirement where Artko was not involved in either the execution or the performance of the contract.

Plaintiff next contends that the facts of this case merit the application of the doctrine of substantial compliance. He points out that the purpose of the licensing requirement is to protect the public against dishonest or incompetent persons becoming involved in the contracting business. (*Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 149-150 [308 P.2d 713].) He asserts that consistent with this purpose, the doctrine of substantial compliance has been applied where, despite the failure to comply literally with the licensing requirements, the party seeking to escape his obligation has received the full protection which the statute contemplates. (*Latipac, Inc.* v. *Superior Court* (1966) 64 Cal.2d 278, 281 [49 Cal.Rptr. 676, 411 P.2d 564]; *Vitek, Inc.* v. *Alvarado Ice Palace, Inc.* (1973) 34 Cal.App.3d 586, 590 [110 Cal.Rptr. 86].) Case law, however, does not support plaintiff's position.

In *Lewis & Queen* v. *N. M. Ball Sons, supra,* 48 Cal.2d 141, one partner was individually licensed, but neither the other partner nor the partnership was. The partnership was not allowed to maintain an action. The California Supreme Court stated, "Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties, and that such deterrence can best be realized by denying violators the right to main-

---

[2]Moreover, assuming that plaintiff was doing business as Artko, section 17902, which defines "person," as used in the fictitious name context, does not include a "firm." The statute thus distinguishes between an individual and an individual doing business under a fictitious name.

tain any action for compensation in the courts of the state [citation]. [¶] . . . [T]he courts may not resort to equitable considerations in defiance of section 7031." (*Id.*, at pp. 151-152.)

In *Latipac, Inc.* v. *Superior Court, supra,* 64 Cal.2d 278, the doctrine of substantial compliance was applied. However, in that case, the corporate plaintiff was licensed at the time the contract was executed and the plaintiff performed for 15 months before the license expired. The license was not renewed until two months after the contract terminated. The test for substantial compliance, as articulated by the court, was whether the policy of section 7031 had been satisfied. To answer that question, the court noted the following three considerations: "(1) the fact that plaintiff held a valid license at the time of contracting, (2) that plaintiff readily secured a renewal of that license and (3) that the responsibility and competence of plaintiff's managing officer were officially confirmed throughout the period of performance of the contract." (*Id.*, at pp. 281-282.) Since all three considerations were present in *Latipac,* the court did not "determine whether any of them, singly or in more limited combination, would constitute 'substantial compliance.'" (*Id.*, at p. 281.)

In *Vitek, Inc.* v. *Alvarado Ice Palace, Inc., supra,* 34 Cal.App.3d 586, substantial compliance with the statute was also found. Although the corporate plaintiff in that case did not possess a valid license at the time the contract was executed, the plaintiff was licensed prior to and during the performance of the contract. To reach its conclusion, the court focused on the specific language of section 7031 that a contractor must be licensed "*during the performance of such act or contract.*"

*General Ins. Co.* v. *Superior Court* (1972) 26 Cal.App.3d 176 [102 Cal.Rptr. 541], involved a factual situation more closely analogous to this case. There, the plaintiff corporation was not licensed at the time the contract was executed nor at any time during its performance. The appellate court acknowledged that, since plaintiff's sole owner, president, chairman of the board and responsible managing officer was personally licensed at all times and personally supervised the performance of the contract, the ultimate statutory purpose of protecting the public, as set forth by the *Latipac* court, was satisfied. However, the court nevertheless held that the doctrine of substantial compliance was inapplicable. (*Id.*, at p. 183.)

In this case, plaintiff was not licensed at the time the contract was executed nor at any time during its performance. However, plaintiff's business, Artko, of which plaintiff was the sole owner, supervisor, and responsible managing party, was duly licensed during this period. Obviously, Artko could never have received and maintained its license unless plaintiff had

been able to demonstrate the requisite experience and knowledge deemed necessary for the safety and protection of the public. Under these circumstances, the ultimate purpose of section 7031 has been served.

However, the *General Ins. Co.* court went further and concluded that a more specific and immediate purpose of section 7031, the practical enforcement of the licensing requirement, must be considered. The court stated, "to disregard its corporate existence [citation] would nullify that part of the licensing law requiring a separate license for a corporation (see Bus. & Prof. Code, §§ 7068, subd. (c), 7069), and to hold that plaintiff has nevertheless substantially complied with Business and Professions Code, section 7031, requiring that it be duly licensed at all times during performance, would emasculate the statutory language and nullify the section's purpose of pragmatically enforcing the Contractors License Law." (26 Cal.App.3d at p. 184.)

Initially, we note that, in contrast to *General Ins. Co. v. Superior Court, supra,* 26 Cal.App.3d 176, this action involves an unlicensed individual plaintiff whose business is licensed. However, sections 7068[3] and 7069 are included in article 5, which encompasses licensing procedures, and they contemplate separate licenses for both individuals and corporations. To ignore the requirement that an individual must be personally licensed would also nullify the purpose of enforcing the Contractors License Law. (Bus. & Prof. Code, § 7000 et seq.)

Furthermore, as the court pointed out in *General Ins. Co. v. Superior Court, supra,* 26 Cal.App.3d 176, there is only one exception to section 7031: ". . . the situation in which a partnership has failed to secure a separate license but each of its partners is personally licensed." (*Id.*, at p. 184.) The court stated that "the creation of another exception is a matter for the Legislature, not the courts." (*Id.*, at p. 185.) In accordance with this rea-

---

[3]At all times here pertinent, section 7068 provided that "The board shall require an applicant to show such degree of knowledge and experience in the classification applied for, and such general knowledge of the building, safety, health and lien laws of the state and of the administrative principles of the contracting business as the board deems necessary for the safety and protection of the public. An applicant shall qualify in regard to his experience and knowledge in one of the following ways: [¶] (a) If an individual, he shall qualify by personal appearance or by the appearance of his responsible managing employee. [¶] (b) If a copartnership or a limited partnership, it shall qualify by the appearance of a general partner or a responsible managing employee. [¶] (c) *If a corporation, or any other combination or organization, it shall qualify by the appearance of the responsible managing officer, the responsible managing employee, or a member of the personnel of such applicant.* [¶] *A responsible managing employee for the purpose of this chapter shall mean an employee who is regularly employed by the applicant and is actively engaged in the classification of work for which such responsible managing employee is the qualifying person in behalf of the applicant.*" (Italics added.)

soning, we find that an individual who brings an action in his name alone claiming that he is licensed by reason of a business of which he is an owner, but which is not a party to the action, may not recover damages. [End of Court of Appeal quotation.]

The judgment should be reversed.

Appellants' petition for a rehearing was denied April 18, 1985. Mosk, J., was of the opinion that the petition should be granted.