Joan H. Lefkow, District Judge,
dissenting in part and concurring in part.
Singh alleges that he and other individuals invested in an LLC for the purpose of buying Arco gas stations from BP Corporation. Before the transaction at issue,- the LLC had purchased seven. Another individual, Gill, had been turned down for a loan and Singh was ineligible to be a BP franchisee because of his non-resident status. To make the transaction work, the LLC by its members transferred $70,000 from Singh’s capital account to Baidwan’s capital account. Baidwan applied with Gill for and personally guaranteed a loan. The LLC agreed to assign a 50% share in the gas station to Baidwan, rather than Singh, and Baidwan promised to assign that share to Singh when requested.
I agree with the majority that the transaction had an unlawful purpose, to obtain a franchise and presumably a loan by making false representations. I do not fully agree that Singh and his cohorts made the representation with intent to defraud BP. In fact, the transaction closed -and BP was (as far as the complaint reveals) not harmed, nor do we know of a default on the loan or whether Singh’s immigration status had changed by the time he requested performance. Nonetheless, if Baid-wan made a false statement to a federally insured bank (which we also do not know) at Singh’s instance, Singh was implicated in criminal conduct, 18 U.S.C. § 1001(a), and the agreement between them was illegal, therefore unenforceable.
I differ from the majority only in its conclusion that the court cannot do equity in a case such as this. The majority rests on the common law distinction between malum in se (contrary to morals, criminal) and malum prohibitum (contrary to statute or regulation) to reach its decision, citing Vitek, Inc. v. Alvarado Ice Palace, Inc., 34 Cal.App.3d 586, 110 Cal.Rptr. 86 (1973), for the proposition that malum in se contracts are “viewed as rendering the agreement absolutely void in the sense that no right or claim can be derived from them.” Fair enough. But California courts have also said the general rule applies to both malum in se and malum prohibitum contracts: “The general rule is that a void contract, a contract against public policy or against the mandate of a statute, may not be made the foundation of any action, either in law or equity.” Hooper v. Barranti, 81 Cal.App.2d 570, 184 P.2d 688, 691 (1947) (citing cases).
The distinction between malum in se and malum prohibitum has fallen into disfavor because it “does not add to the discussion, but may actually obscure a more pointed explanation of a court’s reasoning and result.” 15 Corbin on Contracts § 79.5, p. 25 (2003); see R.M. Sherman Co. v. W.R. Thomason, Inc., 191 Cal.App.3d 559, 236 Cal.Rptr. 577, 581 (1987) (“The First and Second Restatements of Contracts assiduously avoid the terms, focusing instead on legislative intent and the balance of *620 interests between statutory policy and the policy favoring enforcement of contracts. (See Rest., Contracts, § 580, com. a; Rest.2d Contracts, § 178, com. b.)”). As Corbin puts it, “When courts mention the distinction, they identify a contract as contrary to a statute involving conduct malum prohibitum as a preliminary step to providing a judicial remedy less harsh than declaring the contract completely void.” 15 Corbin on Contracts § 79.5, p. 25. By the same.token here, the majority,-while acknowledging that there may be exceptions to the general rule,[1] by identifying the contract as malum in se, is expressing a conclusion that no relief should be granted rather than assessing whether the evidence points to the conclusion that no relief should be granted.
Moreover, the distinction that the majority draws is not clear from the cases they rely on. Indeed, Asdourian and Southfield teach that malum in se is one factor of several the court considers when deciding whether or not to craft an equitable solution. Asdourian, 211 Cal.Rptr. 703, 696 P.2d at 105 (“In each case, the extent of enforceability and the kind of remedy granted depend upon a variety of factors, including the policy of the transgressed law, the kind of illegality and the particular facts.” (emphasis added) (internal quotations omitted)); Southfield, 91 Cal.Rptr. at 516 (“Where the public cannot be protected because the transaction has already been completed, no serious moral turpitude is involved, defendant is the one guilty of the ‘greatest moral fault,’ and defendant would be unjustly enriched at the expense of plaintiff if the rule were applied, the general rule should not be applied.” (emphasis added)). Rather than treating malum in se as a factor to be considered, the majority’s analysis begins with whether the contract was malum in se or malum prohibitum and, because it concludes the former, its analysis ends.
Given the allegations in the complaint, the district court was obliged to consider whether equity favored any relief to Singh based on the evidence in the case. For this reason, I respectfully dissent. I concur in the dismissal with prejudice of all other claims.

. See, e.g., Southfield, 91 Cal.Rptr. at 516 (finding that although the contract was illegal the plaintiff should be entitled to recover the balance due on the advance payment in addition to the agreed interest); Tri-Q, Inc. v. Sta-Hi Corp., 63 Cal.2d 199, 45 Cal.Rptr. 878, 404 P.2d 486, 497 (1965) (remanding for consideration of equitable relief where refusing to enforce severance agreement structured to obtain improper income tax advantage would result in unjust enrichment of the party at greater fault); Asdourian v. Araj, 38 Cal.3d 276, 211 Cal.Rptr. 703, 696 P.2d 95, 107 (1985) (énforcing contract even though contractor was unlicensed and otherwise non-compliant with law); Vitek, 110 Cal.Rptr, 86, 92 (1973) (granting relief to initially unlicensed subcontractor where the public had not been harmed and promised work had been performed).