Filed 2/26/14  Walden v. Visionscape CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MATTHEW AND DANA WALDEN, as Trustees, etc., | B239212 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. SC105804) |
| v. | |
| VISIONSCAPE, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jacqueline A. Connor and Gerald Rosenberg, Judges.  Reversed.

Parcells Law Firm and Dayton B. Parcells III for Plaintiffs and Appellants.

Freisleben Law Group and Lily Chow for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiffs Matthew Walden and Dana Walden, as Trustees of the Walden Family Trust (the Waldens), appeal from the judgment entered in favor of Defendants Visionscape, Inc. and Ruben Flores (Visionscape) after a bench trial. The Waldens contend the trial court erred in permitting Visionscape, a licensed contractor, to retain payments made pursuant to a home improvement contract, based on an erroneous finding that Visionscape complied with certain regulatory statutes governing the content of such contracts and prohibiting contractors from requesting and accepting payments for work that has not been performed and materials that have not been delivered. We agree the trial court's finding was contrary to the undisputed evidence and erroneous as a matter of law. Because the trial court made no other finding in its statement of decision that would independently support the judgment, we reverse and remand the case for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

1.  *The Design Services and Tree Trimming Contracts*

In late 2007, the Waldens retained Visionscape, pursuant to an Agreement for Design Services (Design Services Contract), to create a landscape design for a planned backyard and pool renovation at their home in Brentwood, California. In March 2008, the Waldens approved Visionscape's proposed design drawings, and the parties proceeded with negotiations concerning Visionscape's bid to provide installation services for the landscape remodeling project.

In September 2008, while the installation negotiations continued, the Waldens and Visionscape entered into a Tree Trimming Contract, under which Visionscape agreed to perform an extensive trimming of all trees, hedges and shrubs within the property's existing landscape for the fixed price of $14,350. In September 2008, the Waldens made an initial payment of $7,175 and, in December 2008, the Waldens made another $7,175 payment, satisfying the remaining balance due under the Tree Trimming Contract.

2. *Visionscape's "Progress Payment" Request for Installation Services*

In November 2008, in anticipation of reaching an agreement on the installation bid, Visionscape requested a $20,000 deposit from the Waldens to begin "tagging" trees in order to reserve the best specimens. Visionscape explained that a deposit was required by its vendors, but confirmed that all trees would be presented to the Waldens for approval, and the entire $20,000 was "refundable." On December 1, 2008, the Waldens transferred the requested $20,000 to Visionscape.

In February 2009, as negotiations on the installation bid neared completion, Visionscape requested a payment of $100,000 in anticipation of moving forward with the landscape remodeling project. Before remitting the payment, the Waldens requested an itemized list describing how the funds would be used. On February 19, 2009, Visionscape submitted the requested itemization in the form of a written request for a "progress payment." The request included an invoice that purported to detail how the funds would be applied to installation services Visionscape would perform under a not-yet-executed Agreement for Installation Services. Although some trees had arrived and some planting, grading, irrigation and drainage work had commenced, Visionscape confirmed that the $100,000 "progress payment" was mostly for work it had yet to perform. The Waldens wire transferred the requested $100,000 to Visionscape.

3. *The Installation Contract*

On February 25, 2009, the Waldens and Visionscape executed the Agreement for Installation Services (Installation Contract) and an incorporated Addendum thereto. The parties agreed to a fixed price of $400,000 for all materials, labor and services to be provided by Visionscape under the Installation Contract. Billing was to take place on a "bi-weekly, monthly or major milestone basis dependent upon the Project timeline," with invoices "represent[ing] amounts due based on the percent of Project completed at the time of invoice . . . ."

With respect to change orders, paragraph D of the Addendum required Visionscape to submit "written copies of Contractor's cost or credit proposal for any and all requested changes in the Work, whether requested by Client or required by any

3

authority having jurisdiction of the Project (a 'Change Order')" and provided that "Contractor shall not be required to begin, nor shall Client be obligated to pay for, any additional Work until the change in the Contract Price and/or Contract Time has been agreed to, and the appropriate Change Order has been signed, by Client and Contractor."

In addition to termination by mutual agreement of the parties in writing, paragraph G of the Addendum granted the Waldens the right to "terminate this Agreement at any time for any reason or for no reason whatsoever." Upon termination, the Waldens were required to pay Visionscape "for any unpaid cost of the Project due it under this Agreement based upon the portion of the Project completed to the date of termination."

The Installation Contract incorporated a Master Installation Worksheet, which detailed the installation services to be performed by Visionscape and allocated portions of the $400,000 fixed price to each specified task. The Tree Trimming Contract and payments there under, as well as Visionscape's February 2009 invoice and the $100,000 payment thereon, were incorporated into the Master Installation Worksheet and Installation Contract.

4. *Visionscape Requests an Additional Payment and the Waldens Terminate the Installation Contract*

Shortly after executing the Installation Contract, the Waldens became discontented with Visionscape's handling of the project. Among other things, the Waldens claimed Visionscape had been dishonest about a change order submitted on the pool renovation and also misrepresented the magnitude of its markup on outdoor furniture it proposed to purchase for the project.

On April 7, 2009, Visionscape submitted another $100,000 invoice for services to be performed under the Installation Contract. Unlike the February 2009 "progress payment" request, the April invoice did not purport to itemize the specific services to be performed, but instead requested a payment for "Draw on Contract" to be put toward the general categories of further ground preparation, debris removal, grading, irrigation installation, drainage installation and planting.

4

The Waldens claim the request for an additional $100,000 payment, coupled with their concerns over the pool renovation change order and markups on outdoor furniture, caused them to lose trust in Visionscape. On April 27, 2009, the Waldens terminated the Installation Contract and requested that Visionscape account for its use of all funds paid.

5.      *Dispute Over Refund Due*

On June 8, 2009, in response to the Waldens' request for an accounting, Visionscape provided a copy of the Master Installation Worksheet, with annotations identifying charges it claimed for services and materials allegedly provided pursuant to the Installation Contract. Visionscape's accounting included charges for "Management" work, "Administrative" work, additional tree trimming, and "Front Yard" work that had not been specified in the Master Installation Worksheet or Installation Contract. Visionscape claimed other charges for items in the Master Installation Worksheet, based upon the percentage of work allegedly completed. The remainder of the charges related to plants and other fixtures purportedly purchased for the property. The accounting offered the Waldens a proposed refund of $12,902.30.

On August 14, 2009, the Waldens, through their attorney, sent a letter to Visionscape responding to its accounting. The letter identified 19 categories of charges from Visionscape's accounting and contested nearly all the charges. The Waldens challenged the charges for management, administrative and front yard work on the ground that none of those charges had been contemplated or included in the Installation Contract. They also challenged the charges for additional tree trimming on the ground that the work was included in the Tree Trimming Contract, which had been fully paid. As for charge categories that were part of the Master Installation Worksheet, the Waldens challenged Visionscape's estimates concerning the amount and value of the work performed and materials provided. Additionally, the Waldens demanded a credit for a mature olive tree that Visionscape had removed from the property and previously agreed to replace. In total, the Waldens requested a refund of $98,984.77. At a minimum, the Waldens demanded Visionscape immediately refund the $12,902.30 that it acknowledged in its accounting.

5

On August 28, 2009, Visionscape responded to the Waldens' letter and request for refund. Visionscape largely rejected the Waldens' contentions, responding with brief notations on each of the 19 categories about why it claimed it was entitled to the charges set forth in its original accounting. With its response, Visionscape enclosed a check for the $12,902.30 refund, along with invoices totaling $7,667.71 for allegedly unpaid balances due under the Design Services Contract.

6.      *The Waldens' Complaint*

On November 25, 2009, the Waldens filed a five-count complaint against Visionscape for breach of contract, unfair business practices, fraud, common counts and an accounting. With respect to the breach of contract and unfair business practices claims, the complaint alleged the Installation Contract was "contrary to public policy, void, and unenforceable" because the contract failed to include certain disclosures concerning prohibited downpayments as required by Business and Professions Code section 7159. The complaint also alleged Visionscape violated Business and Professions Code section 7159.5 by requesting and accepting payments in excess of 10 percent of the contract price for work that had not been completed and materials that had not been purchased.[1] As for the fraud claim, the complaint alleged Visionscape misrepresented the magnitude of its markups to induce the Waldens to enter the Installment Contract.

---

[1]     As we discuss later in this opinion, Business and Professions Code section 7159 requires written disclosures to be included in home improvement contracts advising the homeowner that the contractor may not charge a downpayment of more than $1,000 or 10 percent of the contract price, whichever is less. The statute also requires a disclosure advising homeowners that the contractor may not accept a payment, other than the permitted downpayment, for services that have not been performed or materials that have not been delivered. (Bus. & Prof. Code, § 7159, subds. (d)(8) & (9).) Consistent with these disclosures, Business and Professions Code section 7159.5 makes it illegal for a contractor to request and collect payment for services that have not been performed or materials that have not been delivered.

6

The complaint sought an accounting of all services and costs of materials provided by Visionscape, and return of all improperly retained funds.

7.      *Order Severing Issues for Trial*

On November 24, 2010, Visionscape filed a motion to sever the equitable accounting claim to have it tried first by the court.  The Waldens opposed the motion, asserting that the "gist of the action" was a legal claim for money improperly obtained under the allegedly void Installment Contract.  Alternatively, the Waldens asserted that if the accounting claim were severed for a bench trial, it should be tried together with the unfair business practices claim.  Visionscape agreed that the unfair business practices and accounting claims should be tried together by the court.

The trial court granted Visionscape's motion and ordered the accounting and unfair business practices claims severed to be tried first by the court.

8.      *Bench Trial*

The bench trial commenced on July 18, 2011.  Mr. Flores, Visionscape's president, was the principal witness for both parties.  His testimony largely focused on the work Visionscape claimed it performed prior to the Waldens' termination of the Installation Contract and the process by which Visionscape estimated the value of its work on the project in its June 8, 2009 accounting.

Mr. Flores conceded that most of the payments Visionscape requested and accepted from the Waldens were for services that had not been performed and materials that had not been delivered to the project site.  With respect to the Tree Trimming Contract, Mr. Flores acknowledged that Visionscape had required and accepted a downpayment of $7,175 (50 percent of the contract price) before performing any work.  Similarly, with respect to the $20,000 deposit for tree tagging, Mr. Flores admitted that Visionscape accepted this payment for materials that had not been purchased.  Mr. Flores likewise admitted that the $100,000 "progress payment" request was for work that was "going to be done" but had not been performed.

The trial court strictly adhered to a two-day time limit for live testimony. At the end of the second day, the court ordered the parties to file any additional evidence they wished to submit through written declarations and exhibits, together with written closing arguments and proposed statements of decision.

9. *Closing Arguments*

In their closing and rebuttal briefs, the Waldens argued the undisputed evidence established Visionscape had violated Business and Professions Code sections 7159 and 7159.5 by failing to include mandatory disclosures regarding prohibited downpayments and progress payments, while requesting and accepting illegal payments for work not yet completed and materials not yet delivered. Additionally, the Waldens argued Visionscape had no legal or equitable right to keep the illegally obtained funds because (1) the funds had not been used for the purposes for which they were provided; (2) the funds had been applied to charges for work the Waldens had never agreed to pay in a written change order; and (3) the magnitude of the claimed charges was not supported by Visionscape's evidence. With respect to these latter contentions, the Waldens identified 23 categories of charges and credits to be resolved by the trial court in the requested accounting.

Visionscape argued the Waldens were not entitled to relief based on the alleged statutory violations because (1) Business and Professions Code sections 7159 and 7159.5 do not authorize civil penalties; and (2) Visionscape was permitted to charge a "progress payment" under Business and Professions Code section 7159.5. Because the Waldens had terminated the Installation Contract, Visionscape asserted resolution of the accounting claim should be limited to determining the value of the services and materials it had supplied, regardless of whether the funds had been used for the specific purposes for which they were provided. In that regard, Visionscape maintained the 19 categories identified in the Waldens' April 2009 letter provided the proper framework for analyzing the accounting claim. Visionscape asserted its evidence, in particular Mr. Flores's trial testimony and several photographs taken contemporaneously with Visionscape's completion of work, substantiated its claimed charges on all 19 categories. In contrast,

8

Visionscape argued the Waldens had failed to "sustain[ ] their burden of proving how or why their claim for an additional refund is accurate or reliable."

10. *Statement of Decision*

On November 16, 2011, the trial court issued its proposed statement of decision. With respect to the asserted statutory violations and Visionscape's right to compensation under the Installation Contract, the court made the following findings: "Pursuant to Business and Professions Code § 7159, progress payments are permitted, contrary to [the Waldens'] written closing argument, provided that the amount of work or services to be performed and materials and equipment to be supplied are delineated. The Court finds that [Visionscape was] in compliance with this Code and find[s] no fault with [Visionscape] for requesting or collecting the progress payments or 'deposits,' as the parties referred to them." The court found "the parties agreed to various installment payments" and there was "nothing to show in the agreements that [the Waldens] were required by the contract to pay for the services and materials as they were completed—or 'pay as you go.' " The court also found that, "while the contract did call for change orders and preapproved authorizations, the relationship throughout the term included any number of additional requests by the [Waldens] to add to, adjust, or modify items contemplated by the original agreement, and that both parties proceeded regularly without the formality of preauthorizations and change order documents." Hence, the court determined that "[t]he main issue in this action is whether [Visionscape] earned the monies paid by [the Waldens] for the landscaping services and materials prior to their termination in April 2009." The trial court's proposed statement of decision stated no other basis for concluding Visionscape was entitled to payment under the Installation Contract or otherwise.

With respect to whether Visionscape earned the monies paid by the Waldens, the trial court found that the "best way to assess whether work was done and its value, is to try to examine the valuations of the work, services, materials and labor provided through April 2009 as a whole, rather than to try to determine which efforts relate to which item under the total fixed price of the contract . . . ." With the exception of a portion of

9

Visionscape's management charges and the credit for replacement of the olive tree, the trial court concluded that Visionscape's figures were "reasonable and supported by the testimony, evidence, and documents offered." The court stated that it had "primarily focused" on the correspondence and accountings the parties exchanged after termination of the contract. The court also found the photographs submitted by Visionscape constituted "the best 'evidence' of what was done and whether such work was in compliance with the demands and expectations of both sides." On the other hand, the court stated it was "troubled by discrepancies in argument and positions taken by [the Waldens] and actual testimony of [the Waldens'] witnesses." The court, however, noted "that the proposed valuations from both sides were not supported by any measure of detailed invoices or declarations of value, and the limited number of invoices and/or declarations of value were vigorously challenged by the other side." Nevertheless, while acknowledging that its recitation of the evidence was not intended to be "exhaustive," the court stated its review should be "sufficient to demonstrate that [the Waldens] have not met their burden of proof."

Based on the foregoing findings, the trial court's proposed statement of decision disposed of the complaint's remaining causes of action as follows: "The Court, further finding no breach or actionable conduct, determines that the remainder of Plaintiffs['] claims are rendered moot. In addition, the §17200 action requires an unlawful, unfair or fraudulent business practice, which has not been supported by the evidence offered by the Plaintiffs."

On December 1, 2011, the Waldens filed objections to the trial court's proposed statement of decision. Among other things, the Waldens objected to the findings that (1) Visionscape was in compliance with Business and Professions Code sections 7159 and 7159.5; (2) the Waldens had the burden of proof on the accounting claim; and (3) the unfair business practices and other remaining causes of action were rendered moot because the Waldens failed to establish any actionable or illegal conduct by Visionscape. As to each finding, the Waldens requested that the court correct or clarify the legal and factual basis for its determination in light of the undisputed evidence that Visionscape

10

had requested and accepted payments from the Waldens for services that had not been performed and materials that had not been delivered.

On January 11, 2012, the trial court entered the final statement of decision without substantive change.[2] On January 13, 2012, judgment was entered. The Waldens timely appealed.

## DISCUSSION

1.  *Standard of Review*

Upon the trial of a question of fact by the superior court, "[t]he court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." (Code Civ. Proc., § 632.)

When a request for a statement of decision has been made, the scope of appellate review is affected by the statement of decision provided by the trial judge. (See Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2013) ¶¶ 16:197 to 16:216.5.) This principle derives from the statement of decision's fundamental purposes. " 'The code provision requiring written findings of fact is for the benefit of the court and the parties. To the court it gives an opportunity to place upon [the] record, in definite written form, its view of the facts and the law of the case, and *to make the case*

---

[2] Effective January 3, 2012, the case was reassigned from Judge Jacqueline Connor, who presided over the bench trial and issued the proposed statement of decision, to Judge Gerald Rosenberg. On January 10, 2012, the Waldens filed an ex parte application for instructions concerning the status of the statement of decision. The application explained that objections had been filed to the proposed statement of decision, as directed by the trial court, but the parties had not received notice from the court of any further action on the statement of decision. Judge Rosenberg entered an order stating the court would contact Judge Connor regarding the statement of decision. On January 11, 2012, Judge Connor signed the statement of decision without substantive change. Judge Connor has since retired from the superior court.

11

*easily reviewable on appeal* by exhibiting the exact grounds upon which judgment rests. To the parties, *it furnishes the means, in many instances, of having their cause reviewed without great expense.*' " (*Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 126-127.) A proper statement of decision is thus essential to effective appellate review. "Without a statement of decision, the judgment is effectively insulated from review by the substantial evidence rule"; as we would have no means of ascertaining the trial court's reasoning or determining whether its findings on disputed factual issues support the judgment as a matter of law. (*Gordon v. Wolfe* (1986) 179 Cal.App.3d 162, 168.)

"When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court . . . , it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." (Code Civ. Proc., § 634.) Under this mandate, a proper objection to a proposed statement of decision avoids the doctrine of implied findings, and we will not presume that the trial court made a factual finding necessary to sustain the judgment unless the finding was explicitly stated. (See *Culbertson v. Cizek* (1964) 225 Cal.App.2d 451, 465-466; see also *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134 ["if omissions or ambiguities in the statement are timely brought to the trial court's attention, the appellate court will not imply findings in favor of the prevailing party"].)

Thus, "[w]ritten findings are required on all material issues raised by the pleadings and evidence, unless they are waived, and if the trial court renders judgment without making findings on all material issues, the case must be reversed on appeal. [Citations.] Reversal is compelled if there was evidence introduced on such issues and this evidence was sufficient to have sustained finding in favor of the party complaining. [Citations] Findings are also necessary on equitable issues." (*Duff v. Duff* (1967) 256 Cal.App.2d 781, 785; see also *Macmorris Sales Corp. v. Kozak* (1968) 263 Cal.App.2d 430, 440-442 ["The failure to make any finding on equitable issues when they are material is reversible error."].)

12

On the other hand, a party is not required to object to legal errors appearing on the face of the statement of decision, as such errors are not waived. (*United Services Auto. Assn. v. Dalrymple* (1991) 232 Cal.App.3d 182, 186.) Further, where a statement of decision clearly expresses the legal and factual basis for the trial court's resolution of controverted issues, we will not imply findings that the trial court did not make. (See *Paterno v. State of California* (2003) 113 Cal.App.4th 998, 1015 (*Paterno*) [" 'When the record clearly demonstrates what the trial court did, we will not presume it did something different' "].)

2.     *Law Governing Home Improvement Contracts*

To put our review of the trial court's statement of decision in context, we begin with the law governing home improvement contracts. Business and Professions Code[3] section 7159 "identifies the projects for which a home improvement contract is required, outlines the contract requirements, and lists the items that shall be included in the contract . . . ." A "home improvement contract" is "an agreement, whether oral or written, or contained in one or more documents, between a contractor and an owner . . . for the performance of a home improvement . . . if the aggregate contract price . . . , including all labor, services, and materials to be furnished by the contractor, exceeds five hundred dollars ($500)." (§ 7159, subd. (b).)

A home improvement contract must be in writing, legible, printed in at least 10-point typeface (except where a larger typeface is specified), with bold headings, and signed by the parties. (§ 7159(c)(1) & (2).) The licensed contractor must deliver a copy of the home improvement contract to the owner of the property before work begins. (§ 7159, subd. (c)(3)(A).) "[T]he policy of section 7159 is to encourage written contracts

---

[3]     All future statutory references are to the Business and Professions Code unless otherwise specified.

for home improvements in order to protect unsophisticated consumers." (*Asdourian v. Araj* (1985) 38 Cal.3d 276, 292 (*Asdourian*).)

As relevant here, section 7159, subdivision (d) mandates, among other things, the form and content of written notifications that must be included in a home improvement contract if a downpayment or progress payments will be charged:

"(8) If a downpayment will be charged, the details of the downpayment shall be expressed in substantially the following form, and shall include the text of the notice as specified in subparagraph (C):

(A) The heading: 'Downpayment.'

(B) A space where the actual downpayment appears.

(C) The following statement in at least 12-point boldface type:

'THE DOWNPAYMENT MAY NOT EXCEED $1,000 OR 10 PERCENT OF THE CONTRACT PRICE, WHICHEVER IS LESS.'

(9) If payments, other than the downpayment, are to be made before the project is completed, the details of these payments, known as progress payments, shall be expressed in substantially the following form, and shall include the text of the statement as specified in subparagraph (C):

(A) A schedule of progress payments shall be preceded by the heading: "Schedule of Progress Payments."

(B) Each progress payment shall be stated in dollars and cents and specifically reference the amount of work or services to be performed and materials and equipment to be supplied.

14

(C) The section of the contract reserved for the progress payments shall include the following statement in at least 12-point boldface type:

'The schedule of progress payments must specifically describe each phase of work, including the type and amount of work or services scheduled to be supplied in each phase, along with the amount of each proposed progress payment. IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NOT YET COMPLETED, OR FOR MATERIALS NOT YET DELIVERED. HOWEVER, A CONTRACTOR MAY REQUIRE A DOWNPAYMENT.' "

Consistent with the foregoing mandatory notices, section 7159.5 provides: "If a downpayment will be charged, the downpayment may not exceed one thousand dollars ($1,000) or 10 percent of the contract amount, whichever is less" (§ 7159.5, subd. (a)(3)) and "[e]xcept for a downpayment, the contractor may neither request nor accept payment that exceeds the value of the work performed or material delivered" (§ 7159.5, subd. (a)(5)). Violation of these statutes by a licensed contractor is a misdemeanor and cause for discipline by the Contractors' State License Board. (§§ 7159.5, subd. (b), 7159, subd. (a)(5).)

In *Asdourian, supra,* 38 Cal.3d 276, our Supreme Court considered whether a contractor's violation of section 7159 renders a home improvement contract void per se and, thus, bars a contractor from receiving payment as a matter of law. There, a contractor brought an action against property owners, who were real estate investors, to recover compensation for work performed under two oral home improvement contracts for sums exceeding $500. The *Asdourian* court concluded that, in the circumstances presented by the case, the contracts could be enforced, notwithstanding section 7159's mandate that such contracts be in writing. In so holding, the court acknowledged the general rule that "a contract made in violation of a regulatory statute is void," but stressed

15

" 'the rule is not an inflexible one to be applied in its fullest rigor under any and all circumstances.' " (*Asdourian*, at p. 291.) Rather, the court explained, "In compelling cases, illegal contracts will be enforced in order to 'avoid unjust enrichment to a defendant and a disproportionately harsh penalty upon the plaintiff.' [Citation.] ' "In each case, the extent of enforceability and the kind of remedy granted depend upon a variety of factors, including the policy of the transgressed law, the kind of illegality and the particular facts." ' " (*Id.* at p. 292.)

Applying these factors to the oral contracts at issue, the *Asdourian* court concluded they should be enforced. The court observed that "the policy of section 7159 is to encourage written contracts for home improvements in order to protect unsophisticated consumers." (*Asdourian, supra,* 38 Cal.3d at p. 292.) The record, however, supported the conclusion that the defendant real estate investors were "not members of the group primarily in need of the statute's protection." (*Ibid.*) In that context, the court found that section 7159's misdemeanor penalties were sufficient and that it would "not defeat the statutory policy to allow plaintiff to recover for the reasonable value of the work performed." (*Ibid.*)

Conversely, the court found the "penalty which would result from the denial of relief would be disproportionately harsh in relation to the gravity of the violations." (*Asdourian, supra,* 38 Cal.3d at p. 294.) In that regard, the court reasoned that "because plaintiff and defendants were friends, who had had business dealings in the past, the failure to comply with the strict statutory formalities is, perhaps, understandable." (*Id.* at 293.) It was undisputed that the plaintiff had fully performed according to the oral agreements, and the defendants accepted the benefits of the oral agreements, notwithstanding the lack of a written contract. Under those circumstances, the court concluded that were defendants "allowed to retain the value of the benefits bestowed by plaintiff without compensating him, they [would] be unjustly enriched." (*Id.* at p. 293.) Thus, the court affirmed the judgment in favor of the plaintiff for the reasonable value of the work performed under the oral home improvement contracts.

With these authorities in mind, we turn to the legal and factual findings set forth in the trial court's statement of decision.

3.      *The Finding that Visionscape Complied with the Governing Statutes Is Contrary to the Undisputed Evidence*

The trial court concluded Visionscape should retain the funds paid by the Waldens pursuant to the Installment Contract based solely on the following legal and factual findings in its statement of decision:  "Pursuant to Business and Professions Code § 7159, progress payments are permitted . . . provided that the amount of work or services to be performed and materials and equipment to be supplied are delineated.  The Court finds that [Visionscape was] *in compliance with this Code* and find[s] no fault with [Visionscape] for requesting or collecting the progress payments or 'deposits,' as the parties referred to them."  (Italics added.)  As we shall explain, the trial court's legal conclusion regarding the permissibility of progress payments under section 7159 is incomplete, and its finding that Visionscape complied with the governing statutes is contrary to the undisputed evidence.  Because the trial court's statement of decision provided no other legal or factual basis for its conclusion that Visionscape was entitled to payment under the Installment Contract or otherwise, the judgment in favor of Visionscape must be reversed.

As discussed, section 7159 mandates the form and content of certain notifications regarding downpayments and progress payments that must be included in a home improvement contract.  Specifically, section 7159, subdivision (d) requires notifications, printed in 12-point boldfaced type, stating that a "DOWNPAYMENT MAY NOT EXCEED $1,000 OR 10 PERCENT OF THE CONTRACT PRICE, WHICHEVER IS LESS" and that "IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NOT YET COMPLETED, OR FOR MATERIALS NOT YET DELIVERED."  It is undisputed that the Installment Contract contained neither of these statutorily mandated notifications.  This fact alone, contrary to the trial court's stated findings, establishes that Visionscape failed to comply with section 7159, potentially

17

barring it from collecting payment pursuant to the Installment Contract. (See *Asdourian, supra,* 38 Cal.3d at p. 291.)

Furthermore, the omission of these mandatory notifications arguably was not a mere technical violation of the governing statutes. Importantly, Visionscape not only omitted the requisite notifications, but it also arguably undermined the purpose of the notification requirement by charging a purported "progress payment" for work that had not been performed and materials that had not been delivered.[4] Contrary to the trial court's incomplete legal conclusion, sections 7159 and 7159.5 require more than a request for progress payment that specifically references the work to be performed and materials to be supplied—these statutes also require the contractor to *complete* the work and *supply* the materials *before* accepting the progress payment. (§§ 7159, subd. (d)(9)(C), 7159.5, subd. (a)(5).) At trial, Mr. Flores admitted that Visionscape requested and *accepted* the Waldens' $100,000 payment for work that was "going to be done" but had not been performed. Had Visionscape provided the statutorily mandated notifications, the Waldens would have been advised that they were not required to make this payment and that it was illegal for Visionscape to accept it.

---

[4]     Visionscape contends the assertion that it violated section 7159 by failing to include the mandatory notification regarding a $1,000 limit on downpayments is "disingenuous," because its initial draft of the Installment Contract contained a provision for a $1,000 downpayment, which the Waldens requested be removed. There are two problems with this contention. First, the subject provision in the initial draft agreement stated only "A deposit in the amount of $1000.00 is due upon execution of the Agreement"—it did not provide the mandatory notification, in the form required by section 7159, that "THE DOWNPAYMENT MAY NOT EXCEED $1,000 OR 10 PERCENT OF THE CONTRACT PRICE, WHICHEVER IS LESS." (§ 7159, subd. (d)(8)(C).) Second, the record shows the Waldens asked to have the provision removed because they had already paid a $100,000 deposit in the form of the February 2009 "progress payment." Had any draft of Visionscape's Installment Contract contained the statutorily mandated notification, it is reasonably likely that the Waldens would not have paid $100,000 for work that had yet to be performed.

18

Without conceding the trial court erred, Visionscape argues we must presume the judgment is correct and affirm "if it was a right ruling, even if for the wrong reason." The tenor of this argument is that a violation of section 7159 does not necessarily void the Installment Contract under *Asdourian*, and substantial evidence exists for the predicate findings that the Waldens are sophisticated consumers who would be unjustly enriched if Visionscape were required to refund the illicit downpayments. The argument misconstrues the applicable standard of review.

As we explained, when a statement of decision unambiguously expresses the legal and factual basis for the trial court's resolution of controverted issues, we do not imply findings that the trial court did not make. Rather, we review the trial court's express findings, and determine whether those findings are supported by substantial evidence and sufficient to sustain the judgment as a matter of law. The presumption of correctness does not apply in this context. On the contrary, " '[w]hen the record clearly demonstrates what the trial court did, we will not presume it did something different.' " (*Paterno, supra,* 113 Cal.App.4th at p. 1015.)

The statement of decision unambiguously sets forth the legal and factual basis for the trial court's determination that Visionscape was entitled to retain the Waldens' payments for work performed under the Installment Contract. The court found that Visionscape was "in compliance" with the governing statutes and that its undisputed request and acceptance of payments for work that had not been performed did not impair its claim to payment for the reasonable value of the services ultimately rendered. The trial court did not find the Waldens were sophisticated consumers outside the class of individuals in need of the statutes' protections; it did not find that Visionscape's violations were "understandable" due to prior dealings with the Waldens; and it did not find that the Waldens had willingly accepted the work performed by Visionscape such that they would be unjustly enriched were they permitted to deny Visionscape compensation due to the statutory violations. (Cf. *Asdourian, supra,* 38 Cal.3d at pp. 291-294.) As the legal and factual basis for the trial court's conclusion is clearly set

19

forth in its statement of decision, we will not imply findings the court did not make.[5] (*Paterno, supra,* 113 Cal.App.4th at p. 1015.)

In deciding Visionscape was entitled to retain funds paid by the Waldens pursuant to the Installment Contract, the trial court found only that Visionscape had complied with sections 7159 and 7159.5.  As we have explained, that finding is contrary to the undisputed evidence and cannot sustain the judgment as a matter of law.  The judgment is reversed and the case remanded for a new trial.[6]

---

[5]    Code of Civil Procedure section 634 also prohibits this court from inferring findings in favor of the prevailing party where "a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court . . . ."  The Waldens specifically objected to the proposed finding, and requested that the trial court "correct or clarify the ambiguities in the statement of decision to explain the factual and legal basis for its decision that it was not against the law for [Visionscape] to collect payment for work not yet completed, or for materials not yet delivered in excess of $1,000 and the factual and legal basis for its decision that 'Defendants were in compliance with this Code.' "  The Waldens' objection gave the trial court an opportunity to correct its statement of decision and make findings to satisfy the factors identified by the Supreme Court in *Asdourian.*  The trial court's final statement of decision made no such findings, and we are prohibited from inferring the findings on appeal.

[6]    In most circumstances in which a defective statement of decision requires reversal, the matter may be remanded to the trial judge who originally presided over the trial to make the necessary findings.  However, if the trial judge has become incapacitated or, as in this case, has retired from the bench, no other judge can perform the task and the matter must be retried.  (See *Raville v. Singh* (1994) 25 Cal.App.4th 1127, 1130-1133; *Karlsen v. Superior Court* (2006) 139 Cal.App.4th 1526, 1531.)

20

4. *Visionscape Bears the Burden of Proving It Is Entitled to Retain the Funds Paid by the Waldens*

In an action for money had and received on an accounting, the plaintiff seeking the return of funds bears the initial burden of proving the amount of money allegedly received by the defendant. (*Kennard v. Glick* (1960) 183 Cal.App.2d 246, 251.) Once the plaintiff has made this showing, the burden shifts to the defendant to prove it returned the money to the plaintiff or otherwise properly disposed of the funds. (*Ibid.*)

Here, the Waldens proved, and Visionscape admitted, that they paid a total of $134,350 to Visionscape for tree trimming services, tree tagging, and as a "progress payment" under the Installation Contract. The burden thus shifted to Visionscape to prove the proper disposition of these funds. The trial court erred in concluding the Waldens had the burden of proving Visionscape was not entitled to the funds it refused to return.[7]

Visionscape does not deny that it had the burden of establishing its right to retain the funds paid by the Waldens. Instead, it argues the trial court's reference to the Waldens' burden of proof was not prejudicial error, because "the record reflects that the final judgment was based on a review of [Visionscape's] trial presentation and substantially supported by the evidence."

---

[7]    The trial court's misallocation of the burden of proof likely stems from the anomaly in this case that the Waldens were forced to sue Visionscape for the return of funds that Visionscape illegally requested and accepted. (See § 7159.5, subd. (a)(5).) Had section 7159.5's mandate been followed, no payment would have been made before work was completed, and the Waldens would have had the opportunity to review and accept Visionscape's work before making payment. If the Waldens refused to pay for completed work, Visionscape would have had the constitutionally protected right, in addition to all contractual and equitable rights, to obtain a mechanics lien to secure payment. (See Cal. Const., art. XIV, § 3; Civ. Code, §§ 8400 et seq.) This framework, however, requires Visionscape to prove it is entitled to payment for work performed and materials delivered—it does not require the Waldens to prove the negative.

Were the question before us merely whether substantial evidence supports the trial court's determination concerning the reasonable value of the services and materials provided by Visionscape, we might be inclined to consider Visionscape's contention. However, as we explained in the preceding section, due to Visionscape's undisputed violations of sections 7159 and 7159.5, its burden of proving an equitable right to retain the funds requires more than just proof of the services and materials provided. Because courts normally "will not ' "lend their aid to the enforcement of an illegal agreement or one against public policy," ' " Visionscape must establish that permitting it to retain the funds, notwithstanding its statutory violations, is necessary to avoid unjust enrichment. (*Asdourian, supra,* 38 Cal.3d at p. 291; see *Arya Group, Inc. v. Cher* (2000) 77 Cal.App.4th 610, 618, fn. 4 (*Arya Group*) [holding, under *Asdourian*, "contracts made in violation of the statute will not be enforced where a compelling case is not made" and "even where enforcement is warranted, a contractor will be permitted to recover for the reasonable value of the work performed only to the extent that the owner would be unjustly enriched"].)

On retrial, Visionscape bears the burden of proving both a "compelling case" for enforcement of the Installment Contract, notwithstanding its statutory violations, and the extent to which the Waldens would be unjustly enriched if it is not permitted to recover for the reasonable value of the work performed. (*Asdourian, supra,* 38 Cal.3d at p. 292; *Arya Group, supra,* 77 Cal.App.4th at p. 618, fn. 4.)

5.     *The Trial Court's Discovery Ruling Was Not an Abuse of Discretion*

The Waldens moved to compel Visionscape to produce employment records substantiating the cost Visionscape incurred to pay its employees for their work on the project. The trial court granted the motion and ordered Visionscape to provide a declaration, signed under penalty of perjury by Mr. Flores, disclosing the rates of pay for Visionscape's employees who worked on the Walden project. The Waldens contend the trial court abused its discretion by failing to order Visionscape to produce supporting payroll records. We disagree.

22

"We review the trial court's discovery order under the abuse of discretion standard.  [Citations.]  Accordingly, we may not substitute our view for that of the trial court unless there is no legal justification for the court's order."  (*Life Technologies Corp. v. Superior Court* (2011) 197 Cal.App.4th 640, 649.)

At the motion to compel hearing, Visionscape's counsel represented that the payroll records would not be the best evidence of the work actually performed on the Walden project, because those records included wages for all ongoing projects during the pay period—not just the Walden project.  Based on this representation, the trial court was justified in limiting the discovery order to a declaration under penalty of perjury disclosing the wages paid on only the Walden project.  On retrial, the Waldens can challenge the credibility and weight of this evidence with respect to Visionscape's burden of proof.  We find no abuse of discretion.

## DISPOSITION

The judgment is reversed.  The Waldens are entitled to their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, J.

We concur:



KLEIN, P. J.



ALDRICH, J.